Lucy SCHMIDT, Plaintiff,

v.

CAPITOL LIFE INSURANCE COMPANY, a Colorado corporation; Continental Casualty Company, an Illinois corporation, and DOES 1 through 10, inclusive, Defendants.

No. C–85–8048–JPV.

United States District Court,
N.D. California.

Jan. 31, 1986.

Jay S. Linderman, Hinton & Pashkowski, Walnut Creek, Cal., for plaintiff.

Stephen C. Klein, Barger &. Wolen, Los Angeles, Cal., for defendant Capitol Life.

James J. Brosnahan, James P. Bennett, Karl Olson, Morrison & Foerster, San Francisco, Cal., for defendant Continental Cas.

## MEMORANDUM ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND FOR SANCTIONS

VUKASIN, District Judge.

### INTRODUCTION

In August of 1976 plaintiff Schmidt suffered a slip and fall accident which left her permanently disabled. On February 1, 1977, she filed a claim for disability benefits under a group disability insurance policy issued by defendant Capitol Life Insurance Company ["Capitol Life"], under which she was covered through her employment. Capitol Life began paying disability benefits and continued to do so until February 1, 1983, when (allegedly at the behest of defendant Continental Casualty Company ["Continental"], Capitol Life's reinsurer) the payments temporarily ceased.[1]

Plaintiff instituted this action in Contra Costa Superior Court on January 27, 1984, pleading claims based on the benefits hiatus for "breach of duty of fair dealing and good faith," breach of fiduciary duty, and breach of statutory duties under the California Insurance Code. She named as par-

---

1. They were retroactively reinstated in 1985.

ties defendant Capitol Life and Does 1 through 10. The complaint was served on Capitol Life on June 27, 1984. It was subsequently amended, substituting Continental for "Doe 1," and, so amended, was served on the newly-named defendant on February 25, 1985. It is undisputed that complete diversity exists between the named parties and that, absent the Does, jurisdiction would be conferred on this Court by 28 U.S.C. § 1332(a)(1);[2] it was only the presence of the phantom defendants which, until recently, precluded removal to federal court.

■ On April 4, 1985, plaintiff filed an At-Issue Memorandum in the Contra Costa Superior Court proceedings, seeking to have the case placed on the Civil Active List. Despite the fact that the form At-Issue Memorandum contains language stating that "all essential parties have been served," the filing of such a Memorandum does not, as a practical matter, result in automatic dismissal of the Does. *See Goodman v. Travelers Ins.*, 561 F.Supp. 1111, 1113 (N.D.Cal.1983).

Plaintiff filed a first amended complaint on August 26, 1985, alleging a conspiracy between defendants, i.e., tortious breach of contract or "insurance bad faith."[3] By court order of September 20, 1985, the case was removed from the Civil Active List. The most recent phase of this litigation commenced on October 4, 1985, when plaintiff filed a new At-Issue Memorandum; this was followed on October 8 by plaintiff's "Motion to Advance Bench-Bar Settlement Program Hearing and Specially Set for Trial." It is this pleading, defendants contend, which first informed them that plaintiff intended to abandon the Does, since "plaintiff's motion to advance the case for a February trial ... was entirely inconsistent with any desire or intention to file an amended pleading naming new 'Doe' defendants...." Removal Petition, at

3:28–4:3. Believing, therefore, that the action had become removable within the meaning of 28 U.S.C. § 1446(b), defendants removed on November 4, 1985.

On December 10, 1985, plaintiff filed her motion for remand, asserting with some emphasis that the removal petition was in bad faith and wholly improvident, and seeking an award of $500 in attorney's fees as sanction therefor. The matter came on regularly for hearing before the Court on January 16, 1986; at the conclusion of oral argument the matter was ordered submitted for further consideration. Now, having reviewed the arguments of counsel, both written and oral, the Court issues this Memorandum Order denying the motion to remand.

## DISCUSSION

The Court finds itself in the shadowy area where diversity jurisdiction and Doe pleading intersect, a zone in which the plaintiff's option of pleading his claims in a chosen forum and the statutory right of defendants to assert federal jurisdiction over the cause ineluctably clash. Plaintiff's sole argument in support of remand is that defendants are disingenuous in their insistence that the October 8, 1985, "Motion to Advance" was their first notice of plaintiff's intent to abandon the Does. Rather, she submits, a September 17, 1985, Memorandum filed by her in opposition to Continental's state court Motion to Strike the [first] At-Issue Memorandum fully alerted defendants to her desire to retain the case on the Civil Active List and her hope for a February, 1986, trial date. She argues that this represents clear notification of her intent not to proceed against the unnamed and unserved Does; therefore, the argument concludes, the November 4, 1985, removal was untimely, since under Section 1446(b) defendants had thirty days

---

**2.** Plaintiff is a citizen of California. Capitol Life is a Colorado corporation with its principal place of business in Denver; Continental is an Illinois corporation with its principal place of business in Chicago.

**3.** This amendment followed the announcement of the recent decision of the California Court of Appeal in *Sprague v. Equifax, Inc.,* 166 Cal. App.3d 1012, 213 Cal.Rptr. 69 (1985).

from September 17 to file their removal petition.

To a certain extent plaintiff misconstrues the nature of her own September 17 pleading. In that document she admits that "the case is not technically at-issue at present," defendants not having answered the first amended complaint, and that she was "prepared to move to advance the case as soon as it is at issue again." Ex. 47 to Removal Petition, at 2:12 and 2:15–16. Further, her suggestion of a February, 1986 trial date was just that: merely a suggestion, and one upon which the Superior Court judge declined to rule at the hearing on Continental's Motion to Strike. Continental's Opp.Memo., Ex. A. In sum, the September 17 Opposition and the October 8 "Motion to Advance" were not, as plaintiff now asserts, "indistinguishable." Pltf's Memo., at 6:11. In the first pleading she merely expressed an intention; the second filing made that intention definite and certain.

■ A case may become removable after its original filing "if the plaintiff voluntarily dismisses, discontinues or in any way abandons, the action as to the resident joint defendant...." *See Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328, 334 (D.S.C.1979) (citation omitted). Ninth Circuit cases have long acknowledged that removability can arise upon the abandonment of claims against a resident joint defendant—named or fictitious. *See e.g., Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74, 77 (9th Cir.1979); *Southern Pacific Co. v. Haight*, 126 F.2d 900, 905 (9th Cir.1942).

■ Where the voluntary dismissal or abandonment of a resident defendant creates complete diversity between the parties to state proceedings, the nonresident defendant may remove the case to federal court within thirty days of the dismissal or abandonment. *See* 14a Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3732. Section 1446(b) prescribes the time and manner for removing an action which becomes removable after its original filing:

> If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be asertained that the case is one which is or has become removable.

(28 U.S.C. § 1446(b)) (emphasis added).

■ Section 1446(b) thus permits removal within 30 days of the pleading or other action by which the plaintiff unequivocally effects an abandonment of any resident defendants and thereby creates diversity. It is clear that a defendant need not speculate on or anticipate an abandonment from the plaintiff's mere expressions of intent or other equivocal action. Rather, the defendant is entitled to await affirmative and certain action by a plaintiff confirming such abandonment before exercising the right of removal.

In assessing the propriety of removal where the complaint contains Doe defendants, the courts are not rigid in their adherence to the general presumption against removal and in favor of remand. *See Libhart v. Santa Monica Dairy*, 592 F.2d 1062, 1064 (9th Cir.1979); *see generally* 14a Wright, Miller & Cooper, *supra*, § 3739 (presumption). This is because the uncertainty as to the existence of federal jurisdiction where all named parties are diverse is largely created by plaintiff's salting the complaint with phantom defendants; similarly, the ultimate fate of the Does is entirely within plaintiff's control. *See, e.g., Grigg v. Southern Pacific Co.*, 246 F.2d 613 (9th Cir.1957); *Southern Pacific Co. v. Haight, supra.* As the Court observed in *George v. Al-Saud*, 478 F.Supp. 773, 774 (N.D.Cal.1979):

> A non-citizen defendant, sued along with Doe defendants of unstated citizenship, faces a dilemma. If he immediately seeks removal, the objection may be raised that the citizenship of the Does is not known, and that the removal is premature. If he waits until it is clear that there is diversity as to all remaining par-

ties, he runs the risk of being told that he is too late, that he should have assumed that the Does were sham defendants, and that he should have removed within thirty days of original filing.

*Id.* (footnote and citation omitted). Therefore, courts have consistently suggested that where the plaintiff creates an uncertainty as to the appropriate time for removal by naming Does, that uncertainty should be resolved in the removing defendant's favor. *See, e.g., Wistos v. Safeco Life Ins. Co.,* 536 F.Supp. 536, 537–38 (E.D.Cal. 1982); *Gottlieb v. Firestone Steel Products Co.,* 524 F.Supp. 1137, 1140 (E.D.Pa. 1981); *George v. Al.-Saud, supra; cf. Preaseau, supra; Jong v. General Motors Corp.,* 359 F.Supp. 223, 226–27 (N.D.Cal. 1973). Defendants may therefore wait until plaintiff, by some clear and definite action, unequivocally expresses an intention not to proceed against the unnamed defendants. "Defendants should not be required to 'guess' when a case becomes removable." *Gottlieb, supra,* 524 F.Supp. at 1140. It is up to the plaintiff, as creator of the jurisdictional uncertainty, to resolve it by specific action.

 Here, plaintiff did nothing until the October 8th "Motion to Advance" other than articulate vague intentions and opaque desires for an early trial; she did not clearly and definitely state her position that the Does were to be abandoned. Indeed, at the time of the September 17th Opposition Memorandum which she now asserts provided defendants with all the jurisdictional information they needed, she acknowledged that the matter was not "at-issue." At that point, defendants had not even answered the new complaint, nor tested its legal sufficiency by way of motion. The history of this case indicates that defendants were warranted in their skepticism of plaintiff's intentions respecting the Does, as the caption to the original complaint had already been amended once to substitute Continental Casualty for Doe 1. Additionally, the first amended complaint sets forth novel conspiracy allegations against the newly-named Does one through ten [Doe 1 having been replaced by Conti-

nental, leaving but nine fictitious defendants]. Compl., ¶ 14. Defendants therefore could not have been certain that the caption would not once more be amended to name, for example, officers or agents of either corporation as co-conspirators, in lieu of the several Does. This therefore presents a situation where plaintiff, while shrouding the complaint in jurisdictional uncertainty, simultaneously expects defendants to divine from her peripheral suggestions when, or if, the action has become removable. It does not appear that defendants were improvident in relying on the October 8, 1985, "Motion to Advance" as the § 1446(b) "other paper" from which they could first ascertain removability. The November 4, 1985, removal was thus timely, and the motion for remand is meritless.

This being so, plaintiff's ancillary motion for attorney's fees is moot.

### ORDER

In view of the foregoing, and good cause appearing,

IT IS HEREBY ORDERED that plaintiff's motion to remand and for sanctions is denied.